IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| JERRY HEFLIN & APRIL ROBERTSON-HEFLIN, Plaintiffs, | ) ) ) ) | |
| v. | ) ) | Civil Action No.  3:24CV232 (RCY) |
| PHH MORTGAGE CORPORATION, *et al.*, Defendants. | ) ) ) ) ) | |

**MEMORANDUM OPINION**

In this action pursuant to the Real Estate Settlement Procedures Act (RESPA) and its implementing regulations, Plaintiffs allege prohibited dual tracking of their mortgage loan.  The matter comes before the Court on the Motion to Compel Arbitration (ECF No. 43) and Motion to Stay (ECF No. 45) filed by Defendant PHH Mortgage Corporation[1] ("Defendant").  The Court dispenses with oral argument because the facts and legal contentions have been adequately presented, and oral argument would not aid in the decisional process.  *See* E.D. Va. Loc. Civ. R. 7(J).  Because the Court finds that Defendant has not met its burden to establish the existence of a binding agreement to arbitrate between it and Plaintiffs, the instant Motions will be denied.

**I.  PROCEDURAL HISTORY**

Plaintiffs Jerry Heflin and April Robertson-Heflin, proceeding *pro se*, filed this action in Virginia state court on December 28, 2023.  Not. Removal 1, ECF No. 1.  Defendants removed the action on March 29, 2024, *see* ECF No. 1, and this Court has since considered and adjudicated three motions to dismiss, ECF Nos. 19, 32.  Plaintiffs' claim for violation of 12 C.F.R. § 1024.41,

---

[1] Defendant has notified the Court that PHH Mortgage Corporation is known as Onity Mortgage Corporation as of March 23, 2026.  *See* Mot. Compel 1, Mot. Stay 1.  The only other named Defendant, McCabe, Weisberg & Conway LLC, was terminated pursuant to the Court's January 27, 2026 Order.  *See* ECF No. 29.

an implementing regulation of RESPA, has survived against PHH only.  *See generally* Am. Compl., ECF No. 21; Order, ECF No. 20; Order, ECF No. 29.

At the Initial Pretrial Conference on February 19, 2026, the Court set the matter for trial and referred it for settlement.  *See* ECF Nos. 31, 33, 34.  Defendant filed its Answer to the Amended Complaint on March 6, 2026, ECF No. 37, and the Parties participated in a settlement conference on April 17, 2026, ECF No. 39.

Defendant filed the Motion to Compel Arbitration (ECF No. 43) and Motion to Stay (ECF No. 45) on June 1, 2026.  Plaintiffs filed a Response in Opposition to the Motion to Stay ("Response")[2] on July 13, 2026.  ECF No. 47.  Defendant filed a Reply in Support of both instant Motions on July 20, 2026.  ECF No. 48.

## II.  FACTUAL ALLEGATIONS

The facts giving rise to the instant Motions are offered in the Declaration of Angie D. McDade, a paralegal at the law firm representing Defendant.  McDade Decl., ECF No. 44-2 at 1. According to Ms. McDade, Defendant sent its law firm a copy of all its records regarding Plaintiffs Jerry Heflin and April Robertson-Heflin and their former residential property "[t]owards the beginning of this case . . . ."  *Id.* at 1–2.  The documents included a Note and Deed of Trust dated December 14, 2006, a Loan Origination Agreement dated November 14, 2006, and a 2006 Arbitration Agreement, among other account information and correspondence records.  *Id.*  On

---

[2] Plaintiffs' Response is defective in two ways.  First, although styled merely as a response to Defendant's Motion to Stay, it in fact makes arguments in opposition to both Defendant's Motion to Compel Arbitration *and* Motion to Stay.  Second, it is late.  Observing that Mrs. Robertson-Heflin has been experiencing health issues and further, out of deference to Plaintiffs' *pro se* status, the Court will consider the substance of the Response as it relates to both motions.  Plaintiffs are admonished, however, that they must follow federal and local rules.  *CarMax Auto Superstores, Inc. v. Sibley*, 2016 WL 11668736, at *2 (E.D. Va. Aug. 4, 2016).  "This is especially true when, as now, a litigant has received notice of a failure to follow rules and procedures."  *Id.*  With trial approaching, the Court cautions that parties "are not immune from sanction simply because they are *pro se*."  *Tube-Mac Indus., Inv. v. Campbell*, 2022 WL 22904551, at *1 (E.D. Va. July 26, 2022) (citing *Diversified Lending, LLC v. Hotz,* 2019 WL 149557, at *2 (E.D. Va. Jan 9, 2019)).

May 19, 2026, in reviewing and organizing documents for production, Ms. McDade "discovered a copy" of an arbitration agreement executed by Mr. Heflin. *Id.* at 2–3.

### III.  LEGAL STANDARD

In the Fourth Circuit, courts will compel arbitration pursuant to the Federal Arbitration Act if:  "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Chorley Enters. Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (citing *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013)).  The "party seeking to compel arbitration . . . 'bears the burden of establishing the existence of a binding contract to arbitrate.'" *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025) (quoting *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024)); *see also Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 205 (4th Cir. 2025) (explaining that the party seeking to compel arbitration bears the burden of establishing the existence of an arbitration agreement by a preponderance of the evidence).

"The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that [courts] give effect to the parties' intentions as expressed in their agreement." *Chorley*, 807 F.3d at 563.  If the Court concludes that the parties intended to arbitrate a dispute, the Court must enforce that agreement according to its terms. *Id.* (citing *CompuCredit Corp. v. Greenwood,* 565 U.S. 95, 98 (2012)).  "At the same time, it is well-settled that a 'party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'" *Id.* (quoting *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011)).  In facing a challenge to arbitration, courts should order arbitration of a dispute only when "satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability . . . is in issue." *Crosswhite v. Royal Ent. Events, LLC*, 2026 WL 303534, at *2 (E.D. Va. Feb. 4, 2026) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (additional citation omitted)).  Where a

party contests either or both matters, the Court—not the arbitrator—must resolve the disagreement. *Id.*

## IV.  DISCUSSION

Plaintiffs do not argue that their claims fall outside the scope of the arbitration agreement; rather, they contest the validity of the arbitration agreement itself, given that the underlying loan implicated in this suit has been serviced by a chain of entities other than the Defendant over a twenty-year period.  *See generally* Resp.  Defendant relays that BNC Mortgage, Inc. was the mortgage lender when the arbitration agreement was executed; Ocwen serviced the loan between April 2012 and April 2019; Ocwen merged with PHH in April 2019; and Onity is the current loan servicer.  Mem. Supp. Mot. Compel ("Mem. Supp.") at 2–3, ECF No. 44.  Defendant argues that an arbitration agreement, executed by Mr. Heflin and mortgage broker Interglobal Mortgage Corporation on November 14, 2026, is valid and enforceable such that Defendant can compel binding arbitration of this matter.  Mem. Supp. 1–2.

Defendant provided a copy of the referenced arbitration agreement as an exhibit. Verdooren Decl. Ex. 1-C, ECF No. 44-1 at 38.  Mr. Heflin executed the agreement as "Borrower" and an unknown individual executed on behalf of Interglobal Mortgage Corporation as "Mortgage Broker" on November 14, 2006.  *See id.*  The text of the section titled "Parties Bound by this Agreement" provides that in addition to binding "Borrower" and "Mortgage Broker," the agreement binds "the lender whose name or trade name appears on the note and the deed of trust, mortgage or other loan documents," and it further applies:

> to any and all assignees, successors in interest or transferees of the Lender, and all subsequent holders of the Loan Documents, as well as any persons assuming any obligation of the Lender or Borrower under the Loan, and any servicer of the Loan, as if they were actual signatories to [the] Agreement.

Verdooren Decl. Ex. 1-C, ECF No. 44-1 at 38 § 2.  The same section continues:

4

> This Agreement is also made by and between the Borrower and each person and entity providing any settlement service or other service, for consideration, in connection with the Loan, including, without limitation, the settlement agent, the mortgage broker (if any), and any individual employee or agent of any party hereto.

The "Successors and Assigns" section adds:

> This Agreement shall be binding upon, and shall inure to the benefit of, the parties and their respective successors and assigns, heirs and personal representatives, as applicable.

Verdooren Decl. Ex. 1-C, ECF No. 44-1 at 38 § 7.

Notwithstanding the liberal federal policy favoring arbitration, there still must be an underlying agreement between the parties to arbitrate. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (citing *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)); *see also Gemini Drilling & Found., LLC v. Archer W. Contractors, Ltd.*, 2006 WL 568622, at *3 (E.D. Va. March 7, 2006) ("Because the legal predicate of compulsory arbitration is contractual consent, courts can require arbitration only of those disputes which the parties have agreed to arbitrate" (cleaned up)). Parties "may be able to invoke an arbitration agreement even when the exact parties who made that agreement are not the same as the parties in litigation" because "traditional principles of state contract law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *SZY Holdings, LLC v. IPF Sourcing LLC*, 761 F. Supp. 3d 906, 911 (E.D. Va. 2025) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009)) (internal quotation omitted). Courts apply ordinary state law contract principles to determine whether a valid arbitration agreement exists. *See id.* (citations omitted); *see also Adkins*, 303 F.3d at 501 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation.")).

As an initial matter, Defendant avers that, to the extent there are any issues related to the enforceability of the arbitration agreement, the agreement delegates those issues to the arbitrator. Mem. Supp. 9. In reviewing the arbitration agreement, the Court disagrees. Parties to an arbitration agreement may agree to "delegate[] 'gateway questions of arbitrability, such as whether the parties have agreed to arbitrate,' to an arbitrator." *Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756, 773 (W.D. Va. 2023) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019)). However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago*, 514 U.S. at 944 (quoting *AT&T Tech., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)) (cleaned up); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69, n.1 (2010).

Here, Defendant attempts to construe a description of the scope of arbitrable matters as a delegation provision. The section of the agreement Defendant cites as a delegation provision, *see* Mem. Supp. 12, reads in relevant part:

> [A]ny and all disputes, claims, causes of action, controversies, and disagreements arising from or relating to: (1) the Loan, or (2) the validity or legal sufficiency of any provision set forth in any of the Loan Documents, or any disclosures, documents or papers executed in connection with the Loan or prepared in connection with the Loan, shall at the request of any party be resolved by binding arbitration and not by court action.

Verdooren Decl. Ex. 1-C, ECF No. 44-1 at 38 § 2(a). First, the Court observes that this language is devoid of relevant key terms: "delegation," "arbitrability," and "enforceability" appear nowhere in the section. Zooming out to consider the agreement more broadly, the definitions employed throughout cut against Defendant's position with regard to delegation. The agreement defines "Loan Documents" as "the note and the deed of trust, mortgage, or other loan documents" and employs the shorthand "Agreement" in reference to the arbitration agreement itself. Verdooren Decl. Ex. 1-C, ECF No. 44-1 at 38 § 1. This additional context highlights how § 2(a) of the

6

arbitration agreement cannot be a delegation provision because "Agreement" is not included in the enumerated materials that, in giving rise to a dispute, "shall . . . be resolved by binding arbitration." The Court concludes that the text Defendant contends constitutes a delegation provision is not in fact a delegation provision and does not require the Court to delegate the question of the arbitration agreement's enforceability to an arbitrator.  The Court is further assured by the Fourth Circuit's recent reiteration in *Sessoms v. USHealth Advisors, LLC*, that "it is a court, not an arbitrator, that *must* initially decide whether a nonparty to an arbitration agreement . . . is entitled to enforce it." 176 F.4th 795, 803 (4th Cir. 2026) (emphasis in original) (citing *Rogers v. Tug Hill,* 76 F.4th 279, 286 (4th Cir. 2023)).

The Court is unable to decide the next issue—whether the parties have entered a valid agreement to arbitrate—based on the patchwork of information presented.  First, Defendant does not specify what legal theory allows it, Onity Mortgage Corporation, to enforce the 2006 arbitration agreement between Mr. Heflin and Interglobal Mortgage Corporation amidst this lawsuit with Mr. Heflin and Mrs. Robertson-Heflin.  Defendant entirely ignores the fact that Mrs. Robertson-Heflin is not a party to the arbitration agreement it seeks to enforce against her.  *See generally* Mem. Supp.  Additionally, while the sparse corporate history recounted by Defendant suggests that an assumption and/or third-party beneficiary theory could potentially apply, *see* Mem. Supp. 3, Defendant leaves the Court to infer Defendant's ability to enforce an agreement to which it and Mrs. Robertson-Heflin are not parties and to connect the dots between various mortgage brokers and servicers over the course of two decades.[3]  Without more support explaining *why* it would be legally proper and factually appropriate for Onity to enforce an arbitration

---

[3] The Declaration of Benjamin Verdooren, a Senior Loan Analyst for Defendant, offers no meaningful clarity. Mr. Verdooren states that Onity, formerly known as PHH Mortgage Corporation, is a "successor by merger to Ocwen Loan Servicing, LLC, a subsidiary of Onity" but offers no insight as to how Interglobal Mortgage Corporation—the entity actually named on the arbitration agreement—is involved or connected.  *See* Verdooren Decl. 1, ECF No. 44-1.

agreement between Mr. Heflin and Interglobal Mortgage Corporation in this case brought by Mr. Heflin *and* Mrs. Robertson-Heflin, the Court cannot rubberstamp Defendant's self-serving inferential leaps.

Even if the Court had additional clarity about the transfer of contractual rights—from Mr. Heflin to Mrs. Robertson-Heflin and from Interglobal Mortgage Corporation, to Ocwen, to PHH, to Onity—it still could not assess the validity of the arbitration agreement based on Defendant's conflicting representations about what body of state law applies. "Ordinary state-law principles that govern the formation of contracts control the ascertainment whether there is an agreement to arbitrate and, if so, to what extent." *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 533 (E.D. Va. 1999) (internal quotation omitted). Defendant first states that "pursuant to the choice of law provision, New York law applies to evaluate the validity" of the arbitration agreement, *see* Mem. Supp. 8, only to insist two pages later that the arbitration agreement is valid under *Virginia* law, *see* Mem. Supp. 10–11. Moreover, in reviewing the arbitration agreement itself, the Court observed a "Governing Law" provision instructing that "this Agreement shall be governed by the laws . . . of the State of Maryland." Verdooren Decl. Ex. 1-C, ECF No. 44-1 at § 8. Defendant fails to address, let alone resolve, these inconsistencies in urging the Court to presume the parties agreed to arbitrate in a valid and enforceable manner. The Court thus is unable to engage in the required analysis. *See, e.g.*, *SZY Holdings*, 761 F. Supp. 3d. at 912 (district court applies state law to determine both: (1) if plaintiffs are bound by arbitration clause under doctrine of estoppel, doctrine of assumption, as third-party beneficiaries, or as successors-in-interest; and (2) if defendants may invoke an arbitration agreement using an agency theory); *Sessoms*, 176 F.4th at 805 (Fourth Circuit applied state law to determine whether appellee was a third-party beneficiary and was thus entitled to enforce arbitration clause in agreement where it was not mentioned by

name).   Put simply, Defendant has failed to show the Court how it is legally entitled to the arbitration it seeks to compel.

## V.  CONCLUSION

Ultimately, the Court finds that Defendant has failed to meet its burden to establish the existence of a binding contract to arbitrate that compels arbitration between the parties in this case. *See Dhruva,* 131 F.4th at 151.   Accordingly, the Motion to Compel Arbitration must be denied. Further, finding that, absent arbitration, there is no compelling reason to stay the case, the matter will proceed to trial.

An appropriate Order shall issue.

_____/s/_____
Roderick C. Young
United States District Judge

Date: August 7, 2026
Richmond, Virginia

9